UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IVAN CHAVEZ,

                              Plaintiff,

                    -v-

ERIC GUTWEIN, et al.,

                              Defendants.

No. 20-CV-342 (KMK)

OPINION & ORDER

Appearances:

Ivan Chavez
Elmira, NY
*Pro se Plaintiff*

John R. Doran, Esq.
State of New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Ivan Chavez ("Plaintiff"), currently residing at Elmira Correctional

Facility, brings this Action pursuant to 42 U.S.C. § 1983 against Hearing Officer Eric Gutwein

("Gutwein"), Nurse Lurch ("Lurch"), Correction Officer Nucatola ("Nucatola"), and Director of

Special Housing Donald Venettozzi ("Venettozzi"; collectively, "Defendants"), alleging

violations of his due process rights.  (Am. Compl. ¶¶ I(A)–(B), II(B) (Dkt. No. 33).)  Before the

Court is Defendants' Motion To Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure (the "Motion").  (*See* Defs.' Not. of Mot. (Dkt. No. 38).)  For the

reasons that follow, Defendants' Motion is granted.

I.  Background

A.  Factual Background

The alleged facts, which are accepted as true for purposes of resolving this Motion, are as follows.  The events giving rise to this Action took place while Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven").  (Am. Compl. ¶¶ III, IV(D)(1).)[1]  At approximately 1:50 P.M. on August 11, 2017, Plaintiff was in the Green Haven clinic bullpen waiting to return to his cell.  (Id.)  While waiting in the bullpen, Plaintiff was speaking with a fellow inmate by the name of "Quirindongo."  (Id. ¶ IV(D)(2).)[2]  Quirindongo was advising Plaintiff on how to "procur[e] an industry job."  (Id.)  Plaintiff passed Quirindongo a pencil so the latter could take down Plaintiff's information and provide him with "instructions for employment."  (Id.)  Lurch, a nurse at Green Haven, reported to Nucatola that she had observed "an 'unidentified' item being passed between [Plaintiff] and . . . [Quirindongo]."  (Id. ¶ IV(B)(1); see also id. ¶ IV(D)(5).)  Nucatola ordered Plaintiff and Quirindongo to step out of the bullpen and proceeded to conduct a "body frisk" search of both inmates.  (Id. ¶ IV(D)(3).)  Nucatola

---

[1] Plaintiff's allegations are set forth in a standard complaint form interspersed with type-written pages.  It appears that Plaintiff meant to treat the type-written paragraphs on ECF pages 5, 7, and 8 as his response to paragraph IV(D) of the standard complaint form.  Confusingly, however, paragraphs 1–4 on ECF page 5, and paragraphs 1–12 on ECF pages 7 and 8 are separated by a page from the standard complaint form and appear to contain different allegations relevant to certain aspects of Plaintiff's narrative.  For ease of reference, therefore, the Court will treat the 4 type-written paragraphs on ECF page 5 as paragraphs IV(B)(1)–(4).  Although Plaintiff apparently meant to group these paragraphs under paragraph IV(D), they have been placed immediately after paragraph IV(B).  The Court will then treat the 12 type-written paragraphs on ECF pages 7 and 8 as paragraphs IV(D)(1)–(12).  The Court will endeavor to piece together these various type-written paragraphs into the most coherent and consistent narrative the allegations suggest.

[2] Plaintiff's spelling of "Quirindongo" varies throughout the Amended Complaint.  This, however, appears to be the correct spelling as reflected in the various papers Plaintiff has attached to his Amended Complaint.  (See, e.g., Am. Compl. Exs. A, E.)  Note that quotations to the Amended Complaint occasionally reflect corrections to spelling and grammar.

found no contraband during this search.  (*Id.*)  A search of Plaintiff's cell also failed to uncover

any contraband.  (*Id.*)  Plaintiff, however, was then escorted to "SHU-44" and was "never

returned to his cell."  (*Id.*)  At some point, Nucatola created a false report indicating that Plaintiff

had passed Quirindongo a "leafy green substance, in baggies," which tested positive as

marijuana.  (*Id.* ¶ IV(B)(2).)

On August 15, 2017, Plaintiff was served with a misbehavior report that accused him of

"smuggling."  (*Id.* ¶ IV(D)(4).)  The "genesis" of this report was Lurch's accusation that an

unidentified object had been passed between Plaintiff and Quirindongo.  (*Id.* ¶ IV(D)(5).)

At around 1:50 P.M. on August 17, 2017, Plaintiff was taken to a "[T]ier III hearing"

related to the smuggling charge.  (*Id.* ¶ IV(D)(6).)  Defendant Gutwein, a "commissioner's

hearing officer," presided over the hearing.  (*Id.* ¶¶ IV(B)(3), (D)(6).)  At the hearing, Plaintiff

"maintained his innocence" and "waived none of his procedural or substantive due process

rights."  (*Id.* ¶ IV(D)(6).)  Both he and Quirindongo testified that the item being passed between

them in the bullpen was a pencil.  (*Id.* ¶ IV(D)(7).)  After testifying, Plaintiff requested to have

Lurch called as a witness in order to clarify what she saw being passed between him and

Quirindongo.  (*Id.*)  Gutwein, however, denied the request without giving a "good faith stated

reason," and failed to provide "a 2176 witness interview notice, which is mandated."  (*Id.*

¶ IV(D)(8); *see also id.* ¶ IV(B)(3) (alleging that Gutwein denied Plaintiff "the opportunity to

call witnesses").)

Gutwein found Plaintiff guilty and imposed a punishment of 150 days in SHU

confinement, (*id.* ¶ IV(D)(9)), along with a "loss of all privileges," (*id.* ¶ IV(B)(4)).  Plaintiff

alleges that Gutwein's conclusion was "based . . . upon nothing but hearsay allegations contained

in the fabricated report of . . . Nucatola, which originated" with Lurch's accusation.  (*Id.*

¶ IV(B)(3).)  In addition, although Nucatola created a false report stating that Plaintiff had passed

Quirindongo a substance that tested positive as marijuana, the record of the hearing "is devoid of

any drug test, or results, and none were introduced [during] the hearing."  (*Id.* ¶ IV(B)(2).)

On August 20, 2017, Plaintiff filed an appeal to Venettozzi, the "Dir[ector] of SHU."  (*Id.*

¶ IV(D)(10).)  On October 12, 2017, (*id.* ¶ IV(D)(11)), having been "fully apprised of the entire

matter and the blatant disregard for [Plaintiff's] due process rights," Venetozzi affirmed

Gutwein's "decision of guilt" and the sanction he imposed, (*id.* ¶ IV(B)(4)).  On October 10,

2017, however, Venettozzi reversed his decision, stating that "the hearing officer inappropriately

denied a witness who may have provided relevant testimony."  (*Id.* ¶ IV(D)(12) (quoting Ex. H).)

Plaintiff alleges that Defendants violated his due process rights under the Fourteenth

Amendment.  (*Id.* ¶ II(B).)  His claim is premised on "the inappropriate denial of witnesses and

the reliance upon the false misbehavior report and hearsay testimony[] as the entire basis" for

Gutwein's guilty finding.  (*Id.*)  Although Plaintiff did not serve the full 150-day confinement in

SHU, apparently "receiv[ing] a time cut" after 117 days, he suffered "loss of all social activity;

loss of classroom learning"; "loss of participation in two religious services per week"; "loss of

liberty and recreation"; "loss of all phone contact with family"; and "severe mental and

emotional anguish."  (*Id.* ¶ V.)  He sues Defendants solely in their individual capacities, (*id.*

¶ I(B)), and seeks compensatory and punitive damages of $300.00 per day for each day spent in

SHU "based upon the intentional malicious actions of . . . [D]efendants," (*id.* ¶ VI).[3]

---

[3] The Amended Complaint requests "$300.00 per day compensatory and punitive damages for the damages suffered based upon the intentional malicious actions of the defendants."  (*Id.* ¶ VI.)  The Court construes this language as a request for $300 for each day Plaintiff spent in SHU confinement.

B.  Procedural History

Plaintiff filed his initial Complaint on January 10, 2020.  (Dkt. No. 2.)  His request to proceed in forma pauperis was granted on February 20, 2020.  (Dkt. No. 6.)  On September 14, 2020, counsel for Defendants filed a pre-motion letter outlining the grounds for their anticipated motion to dismiss.  (Dkt. No. 20.)  On October 28, 2020, counsel for Defendants filed another letter indicating that Plaintiff had requested leave to file an amended complaint.  (Dkt. No. 23.)  On November 5, 2020, the Court gave Plaintiff permission to file his amended complaint, (Dkt. No. 25), which he did on January 22, 2021, (Dkt. No. 33).  On the same day, Defendants again filed a pre-motion letter outlining the grounds for their anticipated motion to dismiss.  (Dkt. No. 35.)  In a memo endorsement entered on January 25, 2021, the Court set a briefing schedule for Defendants' Motion.  (Dkt. No. 36.)  Pursuant to this schedule, Defendants filed the instant Motion and supporting papers on February 26, 2021.  (*See* Defs.' Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 39); Defs.' Mem. Ex. 1 ("Seguin Decl.") (Dkt. No. 39-1); Not. to Pro Se Litigant Who Opposes Rule 12 Mot. Supported by Matters Outside Pleadings ("Rule 12 Not.") (Dkt. No. 40); Aff. of Service (Dkt. No. 41).)  Plaintiff filed his Opposition on April 7, 2021.  (Pl.'s Aff'n in Opp'n to Mot. ("Pl.'s Opp'n") (Dkt. No. 42).)[4] Defendants filed a Reply on April 20, 2021.  (Reply Mem. of Law in Further Supp. of Defs.' Mot. ("Defs.' Reply") (Dkt. No. 43).)  Without seeking the Court's permission, Plaintiff filed a seven-page Sur-Reply on May 7, 2021.  (Pl.'s Sur-Reply (Dkt. No. 45).)

---

[4] Plaintiff's Opposition is set forth on ECF-stamped pages 1–9 of Docket Number 42.

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *cert. denied*, 540 U.S. 1012 (2003)).

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  In making such a determination, a court

must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *See Carter*, 822 F.3d at 57.

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (alteration in original) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-

4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "his opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted)).

B.  Analysis

The Court construes the Amended Complaint to raise a Fourteenth Amendment procedural due process claim based on alleged deficiencies in Plaintiff's Tier III disciplinary proceeding, Gutwein's guilty determination, and Venettozzi's subsequent affirmance. Defendants move to dismiss the Amended Complaint on multiple grounds, arguing, inter alia, (i) that Plaintiff failed to exhaust available administrative remedies with respect to certain aspects of his claim, (*see* Defs.' Mem. 5–8); (ii) that the Amended Complaint fails to state a due process claim based on Nucatola's allegedly false report because Plaintiff does not allege that he suffered an "atypical and significant hardship," nor does he allege that the false accusations were made in retaliation for his exercise of a constitutionally protected right, (*id.* at 8–10); (iii) that the

9

Amended Complaint fails to state a due process claim against Gutwein because Plaintiff waived his right to call Lurch as a witness, Gutwein's guilty determination was supported by "some evidence" as required under Second Circuit precedent, and Plaintiff fails to allege any other deficiencies in the disciplinary hearing process, (*id.* at 11–15); (iv) that any due process claim fails because Plaintiff does not adequately allege the deprivation of a liberty interest, (*id.* at 16–18); (v) that Venettozzi's affirmance of Gutwein's guilty determination does not give rise to a due process claim, (*id.* at 18–19); (vi) that Plaintiff fails to allege Lurch's personal involvement in any constitutional violation, (*id.* at 19–20); (vii) that Defendants are entitled to qualified immunity, (*id.* at 20–23); and (viii) that, to the extent the Amended Complaint might be construed to raise state law claims, such claims are not actionable under 42 U.S.C. § 1983 and must therefore be dismissed, (*id.* at 23–24).  The Court will address these arguments as necessary to resolve the instant Motion.

### 1.  Personal Involvement of Defendant Lurch

According to the Amended Complaint, Lurch reported to Nucatola that she had observed an unidentified object being passed between Plaintiff and Quirindongo.  (Am. Compl. ¶ IV(B)(1).)  Because Lurch's observation prompted Nucatola's search, Plaintiff alleges that her "accusation" represents the "genesis" of Nucatola's misbehavior report.  (*Id.* ¶ IV(D)(5).)  Defendants argue that these assertions are insufficient to establish Lurch's personal involvement in the alleged constitutional violation.  (Defs.' Mem. 19–20.)  The Court agrees.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation."  *Falls v. Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *31 (S.D.N.Y. Mar. 26, 2021) (ellipsis omitted) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d

Cir. 2013)).  Here, Plaintiff does not allege that Lurch helped to prepare Nucatola's false misbehavior report or took part in the Tier III hearing itself.  (*See generally* Am. Compl.)  His theory, rather, is that Lurch's accusation set in motion the alleged procedural due process violations that occurred as a result of the subsequent disciplinary proceeding.  Such "but[-]for causation," however, "is not the standard for [§] 1983 liability."  *Muhammad v. Pico*, No. 02-CV-1052, 2003 WL 21792158, at *16 (S.D.N.Y. Aug. 5, 2003) (collecting cases).  Courts have recognized that the mere filing of a misbehavior report—even a false report—"does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986); *see also, e.g.*, *Kingwood v. Coombe*, No. 96-CV-432, 1997 WL 323913, at *3 (S.D.N.Y. June 13, 1997) ("It is well established in this Circuit that even the filing of false charges against an inmate does not amount to a constitutional violation, and that the mere filing of a misbehavior report does not satisfy the 'personal involvement' requirement for § 1983 liability." (citations omitted)).  Here, Lurch's involvement is even more attenuated from the alleged constitutional violation: She merely reported suspicious activity that led to the filing of a misbehavior report.  Thus, her minimal role in this case is insufficient to establish her personal involvement in the alleged constitutional violation.  Indeed, Plaintiff himself concedes as much in his Opposition.  (*See* Pl.'s Opp'n ¶ 30 ("Plaintiff concedes that [D]efendant Nurse Lurch should be removed from the lawsuit as she lacks personal involvement in this case.").)  Accordingly, Plaintiff's claim against Lurch is dismissed.

### 2.  Allegations Against Defendant Nucatola

Defendants argue that Plaintiff failed to exhaust available administrative remedies with respect to his claim that Nucatola filed a false misbehavior report, urging the Court to dismiss the

claim on this basis.  (*See* Defs.' Mem. 5–8.)  In the alternative, Defendants argue that Plaintiff's

false-report allegations fail to state a claim.  (*See id.* at 8–10.)  For reasons discussed below, the

Court agrees that Plaintiff's false-report allegations fail to state a claim, and thus, it need not

determine whether Plaintiff adequately exhausted his administrative remedies for this claim.  *See*

*McCoy v. Goord*, 255 F. Supp. 2d 233, 252 (S.D.N.Y. 2003) (explaining that courts "may

consider unexhausted claims on the merits only to dismiss them as frivolous or malicious or for

failure to state a claim"); *see also Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *4

(S.D.N.Y. July 16, 2013) (same).

   Although Plaintiff alleges that Nucatola authored a false misbehavior report, "[t]he

Second Circuit has long held . . . that a prison inmate has no constitutional right to be free from

being falsely accused in a misbehavior report."  *Thomas v. Calero*, 824 F. Supp. 2d 488, 499

(S.D.N.Y. 2011); *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison

inmate has no general constitutional right to be free from being falsely accused in a misbehavior

report"); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (observing that a "prison inmate

has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct

which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982

(1988).  This principle also applies to allegedly "false testimony by corrections personnel at

prison disciplinary hearings."  *Thomas*, 824 F. Supp. 2d at 499 (collecting cases); *see also Brown

v. Venettozzi*, No. 18-CV-2628, 2019 WL 4194432, at *5 (S.D.N.Y. Sept. 4, 2019) (same).  There

are, however, two exceptions to this rule.  A correction officer's false misbehavior report or false

testimony is actionable where an inmate is "able to show either (1) that he was disciplined

without adequate due process as a result of the report; or (2) that the report was issued in

retaliation for exercising a constitutionally protected right."  *Willey v. Kirkpatrick*, 801 F.3d 51,

63 (2d Cir. 2015); *see also Cook v. Quattrocchi*, No. 19-CV-11659, 2020 WL 564082, at *2 (S.D.N.Y. Feb. 5, 2020) (same).  For reasons to be discussed in Part II.B.3.b *infra*, Plaintiff was not disciplined without adequate due process as a result of Nucatola's allegedly false misbehavior report.  Nor has Plaintiff alleged that Nucatola's report was issued in retaliation for Plaintiff's exercise of a constitutionally protected right.  (*See generally* Am. Compl.)  Because neither exception applies, Plaintiff's allegations regarding Nucatola's false misbehavior report, (*see* Am. Compl. ¶ IV(B)(2)), as well any allegations regarding Nucatola's false testimony, (*see, e.g.*, Pl.'s Opp'n ¶ 16), fail to state a claim, *see, e.g.*, *Brown*, 2019 WL 4194432, at *5 (holding that a defendant's allegedly false misbehavior report and testimony did not violate the plaintiff's constitutional rights where the plaintiff had not been "disciplined without adequate due process" and the plaintiff did not allege that the false report was issued in retaliation for his exercise of a constitutionally protected right); *Jackson v. Jackson*, No. 16-CV-8516, 2018 WL 1918626, at *3 (S.D.N.Y. Apr. 20, 2018) (holding that a plaintiff's claim "stemming from [an] allegedly false misbehavior report" failed to state a claim "because the factual allegations [did] not support the contention that [the] [p]laintiff was disciplined without adequate due process as a result of the allegedly false report, or that the report was issued in retaliation for exercising a constitutionally protected right").  Accordingly, the Court dismisses any claims as to Nucatola.

### 3.  Procedural Due Process Claim Against Defendant Gutwein

As discussed, Gutwein presided over Plaintiff's disciplinary hearing, found him guilty of smuggling, and sentenced him to 150 days in SHU.  (Am. Compl. ¶¶ IV(B)(3)–(4), IV(D)(6), (8)–(9).)  Plaintiff alleges that Gutwein (i) denied his request to call Lurch as a witness "without a good[-]faith stated reason" and (ii) inappropriately relied on hearsay evidence and Nucatola's false misbehavior report "as the entire basis for the finding of guilt," all in violation of Plaintiff's

constitutional right to procedural due process.  (*Id.* ¶¶ II(B), IV(B)(3), IV(D)(8).)  "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration omitted).  The Supreme Court has held that inmates retain certain due process rights in prison disciplinary proceedings.  *See Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974); *see also id.* at 563–72 (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment).

### a.  Liberty Interest

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  When evaluating whether an inmate has suffered "atypical and significant hardship," courts must compare the conditions imposed upon that inmate with the conditions "endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999).  When evaluating the severity of an inmate's hardship, courts should consider both the duration and the conditions of confinement.  *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009).

Here, as discussed, Plaintiff ultimately spent 117 days in SHU, lost the enjoyment of various activities and privileges, and endured "severe mental and emotional anguish."  (Am. Compl. ¶ V.)  Defendants raise two arguments in support of their Motion.  First, Defendants argue that any claim predicated on "a purported denial and/or curtailing of unspecified social, recreational, visitation, and religious activities" must be dismissed because Plaintiff failed to

14

exhaust administrative remedies with respect to such a claim.  (Defs.' Mem. 5–8.)  Second, Defendants argue that Plaintiff's alleged punishment—117 days in SHU, combined with the loss of various privileges—does not constitute an "atypical and significant hardship," and therefore does not implicate a liberty interest.  (*Id.* at 16–18.)

Defendants' first argument is based on a misreading of the Amended Complaint. Defendants treat the allegations regarding Plaintiff's loss of privileges as though these allegations raise a separate conditions-of-confinement claim.  That was the scenario presented, for example, in *Ortiz*, where the plaintiff had raised both a Fourteenth Amendment due process claim and a separate, Eighth Amendment conditions-of-confinement claim.  *See* 380 F.3d at 652. Although the plaintiff, prior to bringing suit, appealed his Tier III hearing and obtained a reversal, *id.* at 653, he did not file a separate grievance challenging the conditions of his confinement, *id.* at 654.  The court held that he had exhausted administrative remedies for his due process claim but not for his separate Eighth Amendment claim.  *Id.* at 653–54.  *Ortiz* was subsequently distinguished, however, when the Second Circuit decided *Davis v. Barrett*, 576 F.3d 129 (2d Cir. 2009).  In *Davis*, "unlike in *Ortiz*, [the plaintiff] ma[de] no claim—under the Eighth Amendment or otherwise—challenging the conditions of his confinement directly."  *Id.* at 133. Rather, he sought only to challenge the procedural sufficiency of his disciplinary hearing.  *Id.* His allegations regarding atypical conditions of confinement were "only relevant . . . insofar as [the plaintiff] was required to demonstrate such conditions to allege that he had a liberty interest sufficient to trigger due process protections during his administrative hearing."  *Id.*  Because the plaintiff had successfully appealed his disciplinary hearing, thus exhausting his due process claim prior to bringing suit, the court held that his failure to separately "grieve the conditions of

his confinement [was] no bar to his due process claim," because those conditions were "not the basis on which he allege[d] he suffered harm." *Id.*

In the Court's view, the facts of this case are governed by *Davis*, not *Ortiz*. Here, as in *Davis*, the purpose of Plaintiff's allegations regarding his conditions of confinement— particularly those regarding the suspension of certain privileges and activities—is to establish a liberty interest "sufficient to trigger due process protections" with respect to his disciplinary hearing. *Davis*, 576 F.3d at 133. In contrast to *Ortiz*, Plaintiff has not raised these allegations in support of a separate claim under the Eighth Amendment. Stated differently, "[t]he basis of Plaintiff's alleged harm here is not his conditions of confinement, which would be the proper subject of a grievance, but rather the conduct and imposition of discipline at his hearing." *Cook v. Dubois*, No. 19-CV-8317, 2021 WL 91293, at *5 (S.D.N.Y. Jan. 11, 2021). Although Defendants argue that Plaintiff's claim based on the curtailment of certain privileges and activities should be dismissed because Plaintiff did not file a grievance concerning those conditions, (Defs.' Mem. 5–8), "because Plaintiff is challenging [Gutwein's] conduct in connection with" his disciplinary hearing, and is not raising a separate claim regarding his conditions of confinement, Plaintiff's successful challenge to the disciplinary hearing is "sufficient for purposes of [Prison Litigation Reform Act] exhaustion requirements," *Cepeda v. Urban*, No. 12-CV-408, 2014 WL 2587746, at *5 (W.D.N.Y. June 10, 2014); *see also Davis*, 576 F.3d at 133. Accordingly, the Court declines to dismiss Plaintiff's due process claim against Gutwein on this basis.

Defendants' second argument—that Plaintiff's allegations fail, as a matter of law, to establish a liberty interest, (Defs.' Mem. 16–17)—must also be rejected, particularly in light of the case's procedural posture. The Second Circuit has explained that "[t]he length of disciplinary

confinement is one of the guiding factors in applying *Sandin*'s 'atypical and significant hardship'
test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003).  It is not, however, the only relevant
factor.  "The conditions of confinement are a distinct and equally important consideration in
determining whether a confinement in SHU rises to the level of 'atypical and severe hardship.'"
*Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).  Accordingly, courts must consider both the
conditions of disciplinary confinement and the duration, as "especially harsh conditions endured
for a brief interval and somewhat harsh conditions endured for a prolonged interval might both
be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).

Although the Second Circuit has "explicitly avoided a bright line rule that a certain
period of SHU confinement automatically fails to implicate due process rights," it has
nevertheless established certain "guidelines for use by district courts in determining whether a
prisoner's liberty interest was infringed." *Palmer*, 364 F.3d at 64.  As relevant here, the Second
Circuit has explained that where a plaintiff is confined in SHU for an "intermediate duration" of
between 101 and 305 days, "development of a detailed record" regarding the conditions of
confinement as compared to "ordinary prison conditions" is required.  *Id.* at 64–65.  In such
circumstances, this Court "must 'make a fact-intensive inquiry,' examining 'the actual
circumstances of SHU confinement' in the case before it without relying on its familiarity with
SHU conditions in previous cases." *Id.* at 65 (citation omitted).  Accordingly, a number of courts
have concluded that where, as here, the duration of a plaintiff's confinement in SHU falls in the
"intermediate" range, "the fact-finding required by the Second Circuit . . . cannot occur on a
motion to dismiss." *Mena v. Gutwein*, No. 19-CV-3882, 2020 WL 5370708, at *4 (S.D.N.Y.
Sept. 8, 2020) (quotation marks omitted); *id.* at *2, *5 (declining to dismiss due process claim
based on the liberty-interest prong where the plaintiff alleged that he was detained in SHU for

181 days, suffered lost wages and privileges, and endured "mental and emotional anguish"); *see also Jackson v. Relf*, No. 19-CV-193, 2020 WL 3038607, at *6–7 (N.D.N.Y. Jan. 6, 2020) (same with respect to a plaintiff who spent 117 days in disciplinary confinement and alleged that he was temporarily deprived of his property), *report and recommendation adopted*, 2020 WL 1025297 (N.D.N.Y. Mar. 3, 2020); *Falls v. Campbell*, No. 17-CV-35, 2019 WL 6251245, at *7 (S.D.N.Y. Nov. 21, 2019) ("While [the] [p]laintiff's [third amended complaint] is far from detailed, given the intermediate length of [his] confinement and the indication that [he] may have endured unusual keeplock conditions, development of a detailed record is advisable before the Court will dismiss the claim for failure to plead a protected liberty interest." (citation, quotation marks, and alterations omitted)); *Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *22 (S.D.N.Y. Sept. 26, 2019) (declining to dismiss due process claim for failure to allege a liberty interest where the plaintiff had been sentenced to 180 days in punitive segregation, because "development of a detailed record of the conditions . . . [was] required"); *Keyes v. Annucci*, No. 18-CV-372, 2019 WL 4602240, at *14 (N.D.N.Y. Sept. 23, 2019) (same with respect to a plaintiff detained in SHU for 150 days, and explaining that, because the plaintiff's duration of confinement fell in the intermediate range, "a closer consideration of the conditions of confinement and the circumstances [was] warranted to determine whether even the mostly normal conditions alleged would be considered to impose an atypical and significant hardship"); *Koehl v. Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (same with respect to a plaintiff who spent 120 days in SHU, and concluding that, on a motion to dismiss, the court could not dismiss the plaintiff's due process claim "for failure to describe in detail the conditions of his confinement"), *report and recommendation adopted*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011).

Here, Plaintiff's 117-day confinement in SHU falls in the intermediate range, and thus, "development of a detailed record of the SHU conditions he was subject to [would be] advisable" if the Court were to "dismiss this claim for failure to plead a protected liberty interest." *Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015). Because the factual record regarding Plaintiff's conditions of confinement is underdeveloped—Plaintiff, as noted, alleges only that he suffered a loss of social activity, classroom learning, participation in religious services, recreation activity, and phone contact with family, (Am. Compl. ¶ V)—the Court will not dismiss his procedural due process claim on this basis. Instead, the Court assumes without deciding that Plaintiff's SHU confinement "implicates a protected liberty interest," and will turn to consider whether he has alleged a deprivation of sufficient process. *See Abdur-Raheem*, 2015 WL 667528, at *5 (assuming without deciding that the plaintiff had adequately alleged a liberty interest where he alleged that his SHU confinement "included loss of packages, commissary, and phone privileges" (alteration omitted)).

### b. Procedural Adequacy

To state a procedural due process claim, Plaintiff must allege not only that he was deprived of a liberty interest, but also that he was so deprived *as a result of insufficient process*. *Ortiz*, 380 F.3d at 654. Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). "Prison disciplinary proceedings," however, "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir.

2015) (quoting *Wolff*, 418 U.S. at 556).  For example, inmates do not have a right to counsel or to

confrontation at prison disciplinary hearings, *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004), and

hearsay evidence is admissible, *Louis v. Ricks*, No. 01-CV-9368, 2002 WL 31051633, at *13 n.25

(S.D.N.Y. Sept. 13, 2002) (report and recommendation) (collecting cases).  Ultimately, a guilty

finding in an inmate disciplinary hearing only needs to be supported by "some evidence from

which the conclusion . . . could be deduced."  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)

(quotation marks omitted).

Here, the Court construes the Amended Complaint to challenge two aspects of Plaintiff's

disciplinary hearing.  First, Plaintiff alleges that Gutwein denied him the opportunity to call a

requested witness.  (Am. Compl. ¶¶ II(B), IV(B)(3), IV(D)(8).)  Second, Plaintiff alleges that

Gutwein improperly relied on hearsay evidence and Nucatola's false misbehavior report "as the

entire basis for the finding of guilt."  (*Id.* ¶¶ II(B), IV(B)(3), IV(D)(9).)

Before addressing these arguments, the Court notes at the outset that Plaintiff has

attached to his Amended Complaint numerous documents from the disciplinary hearing record.

(*See* Am. Comp. Exs. A–H (Dkt. No. 33).)  The Court may consider "documents appended to the

[Amended Complaint]" when resolving a Rule 12(b)(6) motion, *Leonard F.*, 199 F.3d at 107

(quotation marks omitted); *see also De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69 (2d

Cir. 1996) ("The complaint is deemed to include any document annexed to it as an exhibit."),

*cert. denied*, 519 U.S. 1007 (1996), and "where a conclusory allegation in the complaint is

contradicted by a document attached to the complaint, the document controls and the allegation

is not accepted as true," *Amidax*, 671 F.3d at 147; *see also, e.g.*, *Feick v. Fleener*, 653 F.2d 69, 75

& n.4 (2d Cir. 1981) (holding that "dismissal was proper" where the "documents upon which

appellants based their claim"—which were attached as exhibits to the complaint—"show[ed] on

their face [the] absence of any grounds for relief").  Moreover, the Court may properly consider

Plaintiff's disciplinary "hearing record . . . on a Rule 12(b)(6) motion to dismiss, without

converting [the Motion] to a summary judgment motion under Rule 56." *Colantuono v.*

*Hockeborn*, 801 F. Supp. 2d 110, 115 n.3 (W.D.N.Y. 2011) (collecting cases); *see also Gonzalez*

*v. Chalk*, No. 13-CV-5486, 2014 WL 1316557, at *3 (S.D.N.Y. Apr. 1, 2014) ("Although a court

deciding a motion under [R]ule 12(b)(6) is generally limited to considering the facts stated in the

complaint, it may consider exhibits or documents incorporated by reference without converting

the motion into a motion for summary judgment." (citing *Int'l Audiotext Network, Inc. v. Am. Tel.*

*& Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).

### i.  Right to Call Witnesses

As noted, inmates are entitled to a reasonable opportunity to call witnesses.  This right is

qualified, however, as "[p]rison officials must have the necessary discretion to keep the hearing

within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or

undermine authority, as well as to limit access to other inmates to collect statements or to

compile other documentary evidence."  *Wolff*, 418 U.S. at 566.  This right "can be denied on the

basis of irrelevance or lack of necessity."  *Jackson v. Prack*, No. 16-CV-7561, 2019 WL

6119010, at *7 (S.D.N.Y. Nov. 18, 2019) (quoting *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30

(2d Cir. 1991)).  It is similarly "circumscribed by the penological need to provide swift discipline

in individual cases."  *Id.* (quoting *Ponte v. Real*, 471 U.S. 491, 495 (1985)).

Here, Plaintiff alleges that Gutwein denied his request to call Lurch as a witness at his

disciplinary hearing.  (*See* Am. Compl. IV(D)(8) (alleging that Gutwein "denied the requested

witness (Lurch) without a good faith stated reason").)[5]  But the transcript of Plaintiff's

disciplinary hearing (the "Hearing Transcript"), which he has attached to his Amended

Complaint, appears to belie this assertion.  Early in the hearing, Gutwein asked Plaintiff whether

there were any witnesses he wished to call on his behalf.  (Hearing Tr. 2.)[6]  Although Plaintiff

appeared to identify three individuals, Lurch was not among them.  (*See id.*)  The relevant

exchange is as follows:

| | |
|---|---|
| CHO Gutwein: | Are there any witnesses you wish to have called on your behalf, Mr. Chavez? |
| I/M Chavez: | Um, the two Officers which I am not sure. . . .  CO, um I can't say her last name so I'll spell it out.  J-A-R-Z-Y-N-A and Officer F-I-L-I-P-O-N-I. |
| CHO Gutwein: | Any other witnesses? |
| I/M Chavez: | Um, the gentleman I just mentioned in particular, um, Quirindongo, Q-U-I-R-I-N-D-O-N-G-O, DIN number 12A1662. |
| CHO Gutwein: | Any other witnesses? |
| I/M Chavez: | Um, if possible, any type of video that can prove my innocence. |

---

[5] At certain points in the Amended Complaint, Plaintiff appears to suggest that Gutwein denied Plaintiff the opportunity to call any witnesses.  (*See* Am. Compl. ¶ II(B) (asserting due process claim based on "the inappropriate denial of witnesses"); *id.* ¶ IV(B)(3) (asserting that Gutwein "denied claimant the opportunity to call witnesses").)  As the Hearing Transcript attached to the Amended Complaint shows, however, such a blanket assertion is demonstrably false, as Gutwein granted Plaintiff's request to call Quirindongo as a witness.  (*See* Am. Compl. Ex. E ("Hearing Tr."), at 2 (Dkt. No. 33).)  In any event, Plaintiff's due process claim appears to be predicated solely on Gutwein's alleged denial of having Lurch testify as a witness.  (*See* Am. Compl. ¶ IV(D)(8); *see also* Pl.'s Opp'n ¶¶ 18–19 (focusing on Gutwein's failure to have Lurch testify).)

[6] The Hearing Transcript can be located at ECF-stamped pages 24–31 of Docket Number 33.  Citations to the Hearing Transcript refer to the native pagination at the bottom right-hand corner of the document.

| CHO Gutwein: | . . . . On your behalf? |
|---|---|
| I/M Chavez: | Um, no sir, other than, um, I'm not really familiar on how these . . . go so um, I don't know . . . speak about it now?  Or . . . um . . . that's, that's about it, sir. |

(*Id.* (ellipses in original).)[7]  After Quirindongo and Nucatola both testified, (*see id.* at 2–5),

Gutwein appeared to give Plaintiff another opportunity to request additional witnesses, (*see id.* at

5 ("Any other witnesses you wish to have called on your behalf?")), but the transcript does not

indicate that Plaintiff attempted to call Lurch, (*see id.*).  The only point at which Plaintiff

appeared even allude to Lurch came at the end of Quirindongo's testimony, when the following

exchange took place:

| CHO Gutwein: | No other questions for the witness? |
|---|---|
| I/M Chavez: | No, sir.  Thank you very much. |
| CHO Gutwein: | . . . the two Officers you mentioned |
| I/M Chavez: | Um, I don't mind having the Officers . . . but . . . I think . . . that . . . nurse . . . so . . . understand . . . |
| CHO Gutwein: | . . . any witnesses you wish to . . . |
| I/M Chavez: | . . . |
| CHO Gutwein: | . . . |
| I/M Chavez: | . . . |
| CHO Gutwein: | The time now is 2:05 pm.  We are adjourned. |

---

[7] Plaintiff does not challenge the fact that the video evidence he requested was not introduced at the hearing.  (*See generally* Am. Compl.)  As Gutwein indicated in the Form 2176 Witness Interview Notice (the "Form 2176 Notice") attached to Plaintiff's Amended Complaint, the video evidence Plaintiff requested did not exist.  (*See* Am. Compl. Ex. C ("Form 2176 Not.") (Dkt. No. 33).)

(*Id.* at 3 (ellipses in original).)  Thus, as far as the Court can discern from the Hearing Transcript, it is not clear Plaintiff ever attempted to call Lurch, let alone that Gutwein denied his request.

Because the Hearing Transcript attached to the Amended Complaint appears to contradict Plaintiff's assertion that he tried to call Lurch as a witness, the Court need not accept this allegation as true.  *See Preterotti v. Lora*, No. 16-CV-91, 2016 WL 6810883, at *5–6 (D. Vt. Oct. 6, 2016) (declining to accept as true an allegation that was discredited by a deposition transcript attached to the plaintiff's complaint).  In view of Plaintiff's failure to request that Lurch be called as a witness, the Court agrees with Defendants' argument, (*see* Defs.' Mem. 11–13), that Plaintiff's "silence . . . constitute[s] a waiver of his due process right to request witness testimony at [his] disciplinary hearing," *Bedoya v. Coughlin*, 91 F.3d 349, 352 (2d Cir. 1996) (holding that a plaintiff had "waived his right to call [a] witness by failing either to reiterate his request for [the witness's] testimony when given the opportunity or to object to the close of the hearing"); *see also Smith v. N.Y. State Dep't of Corr. Servs.*, No. 15-CV-3455, 2018 WL 2305566, at *6 (S.D.N.Y. May 21, 2018) (concluding that a plaintiff had waived his right to call a particular witness by failing to "request[] the presence of [that witness] at any point during the hearing"), *appeal dismissed*, No. 18-1787, 2018 WL 6579309 (2d Cir. Oct. 3, 2018); *Marino v. Humphrey*, No. 05-CV-6571, 2006 WL 2786182, at *6 (S.D.N.Y. Sept. 27, 2006) (finding no constitutional violation where a plaintiff had "never asked for [a particular individual] to be called as a witness, either before or during the hearing"); *Cox v. Malone*, 199 F. Supp. 2d 135, 144 (S.D.N.Y. 2002) (holding that a plaintiff waived his due process right to call a particular witness by "fail[ing] to request that [the witness] be interviewed or called as a witness" and by

"fail[ing] to lodge any procedural objections at the close of the hearing when asked to do so"),

*aff'd*, 56 F. App'x 43 (2d Cir. 2003).[8]

Although the hearing record appears to undermine his allegation, Plaintiff vigorously

maintains that he did call Lurch as a witness and argues that the Hearing Transcript is

"incomplete" through "no fault of his own."  (Pl.'s Opp'n ¶ 18.)  Given Plaintiff's pro se status

and the possibility that the Hearing Transcript omits the relevant exchange, the Court will

---

[8] To the extent Plaintiff also challenges Gutwein's alleged "deni[al] [of] the requested witness . . . without [providing] a good[-]faith . . . reason," and his alleged failure to "provide[] a 2176 witness interview notice," (Am. Compl. ¶ IV(D)(8)), his allegations are without merit.  The Form 2176 Notice to which Plaintiff refers is typically completed by the hearing officer at the conclusion of a disciplinary hearing and is used to explain why the hearing officer denied an inmate's request for witnesses or other evidence.  *See, e.g.*, *Lebron v. Mrzyglod*, No. 14-CV-10290, 2019 WL 3239850, at *7 n.6 (S.D.N.Y. July 18, 2019) (explaining that the Form 2176 is used to "list the reasons for which [a] witness request[] [was] denied"); *Caimite v. Venettozzi*, No. 17-CV-919, 2018 WL 6069458, at *2 (N.D.N.Y. Oct. 29, 2018) (describing Form 2176 as a "witness refusal form"), *report and recommendation adopted*, 2018 WL 6068414 (N.D.N.Y. Nov. 20, 2018).  Here, Plaintiff has attached the Form 2176 Notice to his Amended Complaint.  (*See* Form 2176 Not.)  The only piece of evidence Gutwein addresses in the Form 2176 Notice is Plaintiff's request for video evidence, which, as noted *supra* n.7, was unavailable, (*see id.*).  Also relevant is the one-page hearing record summary (the "Hearing Record Summary") attached as Exhibit D to the Amended Complaint, which reflects Gutwein's understanding that the only witness requested by Plaintiff was Quirindongo.  (*See* Am. Compl. Ex. D ("Hearing Record Summ.") (Dkt. No. 33).)  The Form 2176 Notice and the Hearing Record Summary are consistent with the Hearing Transcript itself.  These documents indicate that Plaintiff did not request Lurch as a witness, and thus, Gutwein never denied such a request.  Gutwein cannot be faulted for failing to provide a rationale for a decision he did not reach, in response to a request that appears not to have been made.

"Moreover, even though the denial of the right to call witnesses without explanation violates New York's prison disciplinary regulation," the violation of a state regulation alone does not give rise to a federal due process violation."  *DeLee v. Hannigan*, No. 09-CV-838, 2014 WL 12837763, at *11 (W.D.N.Y. Nov. 6, 2014) (citation omitted), *report and recommendation adopted in relevant part, rejected in part on other grounds*, 2016 WL 5529382 (W.D.N.Y. Sept. 30, 2016); *see also Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) ("Although state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create federally protected due process entitlements to specific state-mandated procedures." (citations omitted)); *Brooks v. Piecuch*, 245 F. Supp. 3d 431, 445–46 (W.D.N.Y. 2017) (holding that a hearing officer's failure to enter witness refusal forms into evidence did not amount to a constitutional violation where the plaintiff "never requested to view or enter such forms into evidence").

assume that Plaintiff did attempt to call Lurch as a witness and that Gutwein denied this request.[9]

In such a scenario, "'[a]ny violations' of an inmate's 'qualified right' to call witnesses or present

documents 'are reviewed for harmless error,'" *Jackson*, 2019 WL 6119010, at *7 (quoting

*Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009)), and thus, "an inmate must show that he was

prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of

the hearing," *id.*; *see also Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (explaining that

district courts should evaluate alleged procedural errors in prison disciplinary hearings under a

harmless-error standard); *Williams v. Chuttey*, No. 15-CV-1278, 2017 WL 9673722, at *7

(N.D.N.Y. Sept. 5, 2017) ("The Second Circuit has held that prison disciplinary hearings are

subject to a harmless error analysis."), *report and recommendation adopted*, 2018 WL 1413049

(N.D.N.Y. Mar. 21, 2018), *aff'd*, 767 F. App'x 105 (2d Cir. 2019); *Hamilton v. Fischer*, No.

12-CV-6449, 2013 WL 3784153, at *10 (W.D.N.Y. July 18, 2013) (concluding that a hearing

officer's failure to call certain witnesses "was at most harmless error, as the absence of their

testimony would have had no effect on the hearing's outcome").

Here, even if Gutwein denied Plaintiff's request to call Lurch as a witness, this denial

would constitute harmless error, as Lurch's testimony would have been duplicative of other

evidence in the hearing record.  At most, Lurch could have corroborated the information in

Nucatola's misbehavior report and testimony—namely, the fact that Plaintiff "was seen passing

an unidentified object to inmate Quirindongo . . . in the [c]linic [b]ullpen." (Am. Compl. Ex. A

---

[9] It is possible that Plaintiff's request to call Lurch as a witness was not captured in the Hearing Transcript, which contains portions that appear to have been poorly or incompletely transcribed.  (*See generally* Hearing Tr.)  That portions of the hearing record were not captured also seems possible in view of the fact that, according to Gutwein's post-hearing summary, Plaintiff and Quirindongo both testified that Plaintiff had passed Quirindongo a pencil, (Am. Compl. Ex. B ("Hearing Disposition"), at 3 (Dkt. No. 33)), but such testimony is missing from the Hearing Transcript, (*see generally* Hearing Tr.).  *See also* n.12 *infra*.

("Misbehavior Report") (Dkt. No. 33); *see also* Hearing Tr. 4 (CO Nucatola: "I was informed by a, Nurse Lurch, who was in the med room at the time that [two] inmates were seen passing an unidentified object.").)  Confronting a similar scenario in *Zamakshari v. Dvoskin*, 899 F. Supp. 1097 (S.D.N.Y. 1995), then-Judge Sotomayor adopted the finding of a magistrate judge that "[i]t [was] extremely unlikely that [a nurse involved in the underlying incident] would have contradicted her written incident report," and thus, "[h]er testimony would have been redundant," *id.* at 1110.  Accordingly, the court held that under a harmless error analysis, the nurse's "testimony would most likely have made little or no difference."  *Id.* at 1110–11.  Here too, Lurch's testimony would simply have provided a factual predicate—that an unidentified object was observed being passed from Plaintiff to Quirindongo—that was already in the hearing record.  (*See* Misbehavior Report; Hearing Tr. 1 (reciting the facts of Nucatola's misbehavior report).)  Thus, even if Plaintiff had called Lurch as a witness, even if Gutwein had denied this request, and even if this denial was in error, the Court finds that such error would have been harmless, for Lurch's testimony would have been redundant, and "would most likely have made little or no difference."  *Zamakshari*, 899 F. Supp. at 1110–11; *see also Adams v. O'Hara*, No. 16-CV-527, 2018 WL 5728040, at *15–16 (N.D.N.Y. July 24, 2018) (concluding that where a potential witness's testimony would not have been probative of the key issues at the plaintiff's disciplinary hearing, the hearing officer's failure to obtain the witness's testimony was harmless), *report and recommendation adopted*, 2018 WL 4590015 (N.D.N.Y. Sept. 25, 2018); *Colantuono*, 801 F. Supp. 2d at 115 (holding that a hearing officer's alleged denial of a witness was harmless where the plaintiff had "not alleged what [the witness] would have testified about, much less what the substance of [the witness's] testimony would have been, or how it would have helped [the] plaintiff"); *Ford v. Fischer*, No. 09-CV-723, 2011 WL 856416, at *3 (N.D.N.Y. Jan. 31,

2011) (holding that "any procedural errors" based on a hearing officer's refusal to call two witnesses was "harmless" because "none of the excluded evidence would have effected [sic] the outcome of the hearing"), *report and recommendation adopted*, 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011); *Clark v. Dannheim*, 590 F. Supp. 2d 426, 430–31 (W.D.N.Y. 2008) (concluding that a hearing officer's refusal to call a particular witness constituted harmless error where "there [was] no indication or reason to believe that [the witness's] testimony would have been helpful to [the] plaintiff"). Accordingly, Plaintiff cannot state a procedural due process claim based on Gutwein's alleged failure to call Lurch as a witness.[10]

### ii. Evidence Relied Upon by Gutwein

Plaintiff also asserts that Gutwein improperly relied on hearsay evidence and Nucatola's allegedly false misbehavior report "as the entire basis for the finding of guilt." (Am. Compl. ¶ II(B); *see also* Hearing Disposition 3 (stating that Gutwein relied on the "misbehavior report of officer Nucatola," among other evidence).) Interpreting these allegations in their best possible light, the Court understands Plaintiff to challenge the sufficiency of the evidence on which Gutwein's conclusion was based.

---

[10] It is irrelevant that Venettozzi, after affirming Gutwein's determination, (*see* Am. Compl. ¶ IV(B)(4); Am. Compl. Ex. G (Dkt. No. 33)), inexplicably reversed course and decided to overturn this determination, (*see* Am. Compl. ¶ IV(D)(12); Am. Compl. Ex. H (Dkt. No. 33)). The sum and substance of Venettozzi's rationale for reversing Gutwein's determination is that Gutwein "inappropriately denied inmate witness who may have provided relevant testimony." (Am. Compl. Ex. H.) Venettozzi did not cite any record evidence indicating that Gutwein had denied a witness, nor did he elaborate on what "relevant testimony" this putative witness could have provided. In any event, Venettozzi's reversal of Gutwein's determination does not "resolve the issues presently pending before the Court because the reversal of [P]laintiff's disciplinary hearing 'does not automatically establish his federal claim.'" *Logan v. Harvey*, No. 16-CV-1412, 2017 WL 9511179, at *9 (N.D.N.Y. Sept. 26, 2017) (alteration omitted) (quoting *Sira*, 380 F.3d at 76 n.9), *report and recommendation adopted*, 2017 WL 4621108 (N.D.N.Y. Oct. 16, 2017). "It is federal constitutional standards, not state law or regulations, that define the requirements of procedural due process," and thus, "the Court must properly make its own determination to resolve the claims pending in this § 1983 action." *Id.* (alteration omitted).

As noted above, a guilty finding in an inmate disciplinary hearing must be supported by "*some evidence* from which the conclusion . . . could be deduced." *Hill*, 472 U.S. at 455 (emphasis added) (quotation marks omitted).  The Court's application of this standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.*  Rather, the Court considers "whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (emphasis added).  The Second Circuit, however, "has not construed the phrase 'any evidence' literally." *Luna*, 356 F.3d at 488.  "Rather, [it] ha[s] looked to see whether there was 'reliable evidence' of the inmate's guilt." *Id.*; *see also, e.g.*, *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) ("[W]e have required that [prison] disciplinary determinations be supported by some '*reliable* evidence' of guilt.").  "Due process," the Second Circuit has observed, "does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion." *Sira*, 380 F.3d at 80.  Nevertheless, the "some evidence" standard is still "extremely tolerant," *id.* at 69, and allows a "low bar," *Lebron v. Mrzyglod*, No. 14-CV-10290, 2019 WL 5965232, at *13 n.9 (S.D.N.Y. Nov. 13, 2019); *see also, e.g.*, *Alsaifullah v. Smith*, No. 14-CV-1309, 2016 WL 1595391, at *7 (N.D.N.Y. Apr. 20, 2016) (describing *Hill*'s "some evidence" standard as "undemanding").

With respect to Plaintiff's argument that Gutwein improperly relied on Nucatola's misbehavior report, "just as an inmate possesses no due process right to be free from being issued a false misbehavior report, an inmate possesses no due process right to be free from having that false misbehavior report relied on by a hearing officer at a disciplinary hearing." *Fulmore v. Raimo*, No. 10-CV-1096, 2012 WL 4033731, at *4 (N.D.N.Y. Sept. 12, 2012); *see*

*also Freeman*, 808 F.2d at 950, 955 (concluding that "there existed sufficient evidence to support [a] [prison] disciplinary committee's finding of guilty" despite the committee's reliance upon an allegedly false report filed by the defendant); *Canales v. Sheahan*, No. 12-CV-693, 2017 WL 1164462, at *9 (W.D.N.Y. Mar. 28, 2017) (holding that the plaintiff's allegation that a hearing officer "based [his] guilty determination upon a false misbehavior report" was "plainly insufficient" to support a procedural due process claim, because "an inmate does not possess a due process right to be free from having a hearing officer rely upon an alleged false misbehavior report at a disciplinary hearing"), *report and recommendation adopted*, 2018 WL 774335 (W.D.N.Y. Feb. 7, 2018); *Cole v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-539, 2016 WL 5394752, at *20 (N.D.N.Y. Aug. 25, 2016) (same), *report and recommendation adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016).  Moreover, it is well-established that a correction officer's misbehavior report may constitute reliable evidence of guilt.  *See Jenson v. Mullin*, No. 14-CV-1337, 2016 WL 5394744, at *4 (N.D.N.Y. Sept. 27, 2016) (concluding that although "the only evidence offered at the [disciplinary] hearing were . . . misbehavior reports prepared by [a corrections officer,]" those reports constituted "some evidence" to support the plaintiff's guilty disposition), *aff'd*, 692 F. App'x 61 (2d Cir. 2017); *Thomas v. Connolly*, No. 10-CV-2401, 2012 WL 3776698, at *23 (S.D.N.Y. Apr. 10, 2012) (concluding that, "for purposes of a prison disciplinary hearing," a misbehavior report summarizing the results of an investigation into the plaintiff's alleged misconduct constituted sufficient evidence to support the hearing officer's guilty determination), *report and recommendation adopted*, 2012 WL 3758457 (S.D.N.Y. Aug. 30, 2012), *appeal dismissed*, No. 12-4061 (2d Cir. Apr. 5, 2013); *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214–15 (W.D.N.Y. 2010) (concluding that a detailed misbehavior report based on the reporting officer's first-hand involvement in the underlying

incident constituted reliable evidence of the plaintiff's guilt).  Finally, to the extent Plaintiff

separately challenges Gutwein's reliance on Nucatola's testimony itself, it is up to the hearing

officer—not this Court—to make determinations regarding a witness's credibility.  *See Hill*, 472

U.S. at 455 (explaining that application of the "some evidence" standard does not require an

"independent assessment of the credibility of witnesses"); *Alsaifullah*, 2016 WL 1595391, at *7

(concluding, despite the plaintiff's allegation that a correction officer's "testimony and report

were fabricated," that "it was within the hearing officer's province to assess the credibility of the

witnesses"); *Johnson v. Goord*, 487 F. Supp. 2d 377, 400 (S.D.N.Y. 2007) (explaining that a

court "may not make judgments on the credibility of witnesses at a prison disciplinary hearing").

Accordingly, Plaintiff does not state a procedural due process claim based on Gutwein's reliance

on Nucatola's testimony and misbehavior report.

　　　　Plaintiff also contends that Gutwein violated his due process rights by relying on

"hearsay allegations" in Nucatola's misbehavior report.  (Am. Compl. ¶ IV(B)(3); *see also id.*

¶¶ II(B), IV(D)(9).)  This argument overlooks the fact that hearsay evidence is admissible in

prison disciplinary proceedings.  *See Buchanan v. Warden, FCI Otisville*, No. 13-CV-6356, 2014

WL 3778205, at *3 (S.D.N.Y. July 31, 2014) (concluding that a hearing officer's reliance on an

investigation report "comport[ed] with the 'some evidence' standard" and observing that,

"[w]hile the report was admittedly hearsay, courts have routinely held that such evidence can

constitute reliable evidence" (collecting cases)); *Thomas*, 2012 WL 3776698, at *23 (explaining

that a misbehavior "report was admissible and sufficient for purposes of a prison disciplinary

hearing, since the inmate does not have a right of confrontation, and hearsay evidence is

permitted" (collecting cases)); *Louis*, 2002 WL 31051633, at *13 n.25 (gathering authority for

the proposition that "hearsay is admissible in a [prison] disciplinary proceeding").  Thus,

Plaintiff may not state a procedural due process claim based on the fact that Gutwein relied on allegations in the misbehavior report.

Although the Second Circuit has held that a prisoner's due process rights are violated "when he is punished solely on the basis of a victim's hearsay accusation without any indication in the record as to why the victim should be credited," *Luna*, 356 F.3d at 490, that is not the situation here. According to the hearing record attached to the Amended Complaint, Gutwein relied on four pieces of evidence in determining that Plaintiff was guilty of the charged offense: (1) Nucatola's misbehavior report, which contained Lurch's allegation that Plaintiff was observed passing an unidentified object to Quirindongo; (2) Nucatola's testimony at the disciplinary hearing, in which he stated that he recovered 2.1 grams of marijuana from Quirindongo; (3) Quirindongo's testimony at the disciplinary hearing, in which he stated that Plaintiff had passed him a pencil; and (4) Plaintiff's testimony at the disciplinary hearing, in which he first suggested he had passed nothing, but then suggested that he had passed a pencil. (Hearing Disposition 3; Misbehavior Report; Hearing Tr. 2, 4–5.) With respect to the hearsay evidence, the Court first notes that although Lurch did not testify at the hearing, Gutwein was still permitted to rely on her allegation as memorialized in Nucatola's misbehavior report. (*See* Misbehavior Report ("On the above date and time, I was notified by Nurse Lurch that [Plaintiff] was seen passing an unidentified object to inmate Quirindongo . . . in the [c]linic [b]ullpen.").) A comparable situation arose in *Thomas*, where a corrections officer prepared a misbehavior report against a prisoner based substantially on allegations by a third party—in that case, a chaplain. *See* 2012 WL 3776698, at *18. Although the chaplain did not testify at the prisoner's disciplinary hearing, *see id.* at *19, the court held that the misbehavior report itself constituted sufficient evidence to support the hearing officer's guilty determination, *id.* at *23. Here,

likewise, Gutwein's reliance on Lurch's accusation in the misbehavior report did not violate

Plaintiff's right to due process.  Plaintiff has alleged no "motive for [Lurch] to implicate Plaintiff

falsely, nor reason for [Gutwein] to question the credibility of [her accusation]." *Creech*, 688

F. Supp. 2d at 214–15 (concluding that a hearing officer properly relied on a misbehavior

report—despite the fact that its author did not testify at the prisoner's hearing—in part because

the officer "was not given any reason to doubt the nature of the evidence" provided in the

report).  The remainder of Nucatola's misbehavior report was "based on his first[-]hand

observation, and contain[ed] a detailed account of th[e] [underlying] incident, including the time,

place, circumstances, and names of participants." *Id.* at 214.  (*See* Misbehavior Report.)[11]

Gutwein could properly determine that such a report provided a "sufficient degree of reliable

evidence." *Creech*, 688 F. Supp. 2d at 215.  In any event, Nucatola's testimony at the

disciplinary hearing corroborated the information in his misbehavior report, (*compare*

---

[11] In the Misbehavior Report, Nucatola summarizes the events giving rise to this Action
as follows:

> On the above date and time, I was notified by Nurse Lurch that [Plaintiff] was seen
> passing an unidentified object to inmate Quirindongo . . . in the [c]linic [b]ullpen.
> I entered the bullpen and ordered inmate Quirindongo to step out.  At which time
> he removed the object from his pants pocket and dropped the object on the floor.  I
> immediately recovered and secured the object.  Inmate was again ordered out of the
> bullpen and complied.  I conducted a pat frisk of said inmate, no further relatable
> contraband found.  The object was nine (9) small baggies of a green leafy substance
> wrapped in two (2) blue glove fingertips.  The substance tested positive for
> marijuana, and was bagged for evidence.  Contraband was placed in evidence
> locker per directive 4910 A.  I then entered the bullpen and ordered [Plaintiff] out
> of the bullpen.  A pat frisk of [Plaintiff] was conducted and no further contraband
> was found.

(Misbehavior Report.)

Misbehavior Report, *with* Hearing Tr. 4), and thus, the only piece of hearsay evidence that was truly necessary to Gutwein's determination was Lurch's initial allegation.

As discussed, Plaintiff cannot establish a procedural due process claim based on insufficient evidence so long as there was "some reliable evidence of guilt." *Elder*, 967 F.3d at 117 (quotation marks omitted). Stated differently, Plaintiff fails to state a claim unless he plausibly alleges that there was *no* such evidence in the hearing record. Considering the totality of evidence in the hearing record attached to the Amended Complaint, the Court concludes that Plaintiff's guilty determination was supported by "some reliable evidence of guilt." *Id.* The record contained evidence that Plaintiff was observed passing an object to Quirindongo, (*see* Misbehavior Report; Hearing Tr. 4); that, when Nucatola conducted a pat frisk of Quirindongo, he discovered a substance that tested positive for marijuana, (*see id.*); that no contraband or other objects were discovered on Plaintiff, (*id.*); and that, although Plaintiff and Quirindongo evidently testified that Plaintiff had passed a pencil to Quirindongo, no such pencil was discovered, (Hearing Disposition 3 (stating that Quirindongo and Plaintiff testified that Plaintiff had passed Quirindongo a pencil); Hearing Tr. 5 (CHO Gutwein: "Was there a pencil recovered at all?" CO Nucatola: "I don't recall a specific pencil, no.")).[12, 13] This evidence permitted Gutwein to infer

---

[12] At the disciplinary hearing, Plaintiff initially maintained that he had not passed anything to Quirindongo. (*See* Hearing Tr. 2 ("I never passed him anything."); Hearing Disposition 3 (noting same).) Moreover, although Gutwein indicated that Plaintiff and Quirindongo both testified that Plaintiff had passed a pencil to Quirindongo, (Hearing Disposition 3), that is not made clear from the Hearing Transcript, which, as noted *supra*, contains portions that were not well transcribed. As discussed, Plaintiff now maintains that he *did* pass a pencil to Quirindongo.

[13] Although the Amended Complaint alleges that no contraband was discovered when Nucatola searched Plaintiff and Quirondongo, (Am. Compl. ¶ IV(D)(3)), Plaintiff cannot credibly allege—given the documents he attached to his own Amended Complaint—that the hearing record was devoid of evidence regarding Nucatola's discovery of marijuana.

that the object Plaintiff passed to Quirindongo was not a pencil—of which there was no

evidence—but was, in fact, the marijuana recovered on Quirindongo a short time later.

Circumstantial evidence such as this may support a guilty determination in a prison disciplinary

hearing. *See Hill*, 472 U.S. at 456–57 (concluding there was sufficient evidence for a prison

disciplinary board to find inmates guilty of assault where the hearing record indicated that (1) a

prison guard heard a commotion, investigated same, and discovered in inmate who had just been

assaulted; (2) the guard saw three other inmates fleeing down a walkway; and (3) there were no

other inmates in the area); *Logan*, 2017 WL 9511179, at *7 (observing that "circumstantial

evidence" regarding the plaintiff's performance of a lewd act did "not preclude [the hearing

officer's] guilty determination"); *Allah-Kasiem v. Sidorowicz*, No. 09-CV-9665, 2012 WL

2912930, at *11 (S.D.N.Y. July 17, 2012) (concluding that circumstantial evidence the plaintiff

had forged a document to perform unauthorized legal work and made false statements was

sufficient to meet the "some evidence" standard); *Kasiem v. Guzman*, No. 02-CV-6465, 2011 WL

4352387, at *7 (W.D.N.Y. Sept. 16, 2011) (upholding hearing officer's determination that the

plaintiff was guilty of sending sexually graphic letters to a corrections officer based on

circumstantial evidence regarding the plaintiff's writing style and repeated spelling errors);

*Russell v. Ricks*, No. 02-CV-940, 2006 WL 1555468, at *13 (N.D.N.Y. May 31, 2006) (holding

that circumstantial evidence—namely, the fact that an inmate sustained injuries "consistent with

having been caused" by an object found in the plaintiff's possession—"strongly suggested" that

the plaintiff "had engaged in [the] . . . disorderly conduct" for which he was issued a misbehavior

report, and that such circumstantial evidence satisfied the "some evidence" standard).

Although the evidence presented against Plaintiff may not have been overwhelming, the

"Federal Constitution does not require evidence that logically precludes any conclusion but the

one reached by the disciplinary board." *Hill*, 472 U.S. at 457.  In *Hill*, for example, even though

the evidence was "meager," and there was a lack of direct evidence identifying any of the

charged inmates as the assailant in the assault, the Supreme Court upheld the disciplinary board's

guilty determination because "the record [was] not so devoid of evidence that the findings of the

disciplinary board were without support or otherwise arbitrary."  *Id.*; *see also, e.g.*, *Johnson*, 487

F. Supp. 2d at 384 (holding that although "the evidence presented against [the] plaintiff was

'thin,' it nonetheless amounted to 'some evidence'").  Here, likewise, the Court finds that there

was enough reliable evidence of guilt in the hearing record to support Gutwein's determination.

Based on the documents attached to his Amended Complaint, Plaintiff does not plausibly allege

that there was no reliable evidence of guilt in the hearing record, and thus, he fails to state a

procedural due process claim against Gutwein based on inadequate evidence.

### 4.  Procedural Due Process Claim Against Defendant Venettozzi

As discussed, Plaintiff also asserts a due process claim against Venettozzi based on

Venettozzi's initial decision to affirm Gutwein's guilty determination.  (Am. Compl. ¶ IV(B)(4)

(alleging that Venettozzi, "after being fully apprised of the entire matter and the blatant disregard

for claimant's due process rights, deliberately affirmed . . . Gutwein's decision of guilt"); *id.; see

also* ¶ IV(D)(11) (arguing that by "affirm[ing] [Gutwein's] decision" and "upholding a

disposition without any evidence," Venettozzi "ma[de] himself a defendant").)  As noted *supra*,

"a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional

deprivation" to establish his liability in a suit under § 1983.  *Grullon*, 720 F.3d at 138.  There has

been a long-running split in the Second Circuit as to "whether an allegation that a defendant

affirmed a disciplinary proceeding is sufficient to establish" that defendant's personal

involvement in the underlying constitutional violation.  *Samuels v. Fischer*, 168 F. Supp. 3d 625,

643 (S.D.N.Y. 2016) (citation and alterations omitted) (surveying authority on both sides).

Relying on the Second Circuit's 2020 decision in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir.

2020)—which eliminated special standards for supervisory liability and required that alleged

constitutional violations be "established against the supervisory official directly," 983 F.3d at

618—at least two courts in this District have found that a defendant's "fail[ure] to correct

another officer's violation" at a prison disciplinary hearing "does not suffice" to establish that

defendant's personal involvement in the alleged constitutional violations. *Washington v.*

*Fitzpatrick*, No. 20-CV-911, 2021 WL 966085, at *10 (S.D.N.Y. Mar. 15, 2021) (alteration

omitted); *see also Smart v. Annucci*, No. 19-CV-7908, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26,

2021) (dismissing due process claim based on "Venettozzi['s] deni[al] [of the] [p]laintiff's

administrative appeal" because, under *Tangreti*, such an allegation "cannot support the inference"

that Venettozzi was personally involved in the alleged constitutional violation).  Thus, even if

Gutwein had committed a constitutional violation at Plaintiff's disciplinary hearing, it seems

doubtful that Plaintiff could state a claim against Venettozzi based solely on his affirmance of

Gutwein's determination.  But the Court need not resolve the claim against Venettozzi on this

basis.  Here, given "the absence of any underlying constitutional violation" at Plaintiff's

disciplinary hearing to begin with, "Plaintiff cannot maintain a cause of action against Defendant

Venettozzi based on" his affirmance of Gutwein's determination.  *Hinton v. Prack*, No.

12-CV-1844, 2014 WL 4627120, at *13 (N.D.N.Y. Sept. 11, 2014); *see also Barnes v. Annucci*,

No. 15-CV-777, 2019 WL 1387460, at *15 (N.D.N.Y. Mar. 12, 2019) (explaining that "because

no constitutional violation occurred" at the plaintiff's disciplinary hearing, "and there was no

wrong to remedy," the plaintiff could not state a due process claim against Venettozzi based on

his affirmance of the disciplinary determination), *report and recommendation adopted*, 2019 WL

1385297 (N.D.N.Y. Mar. 27, 2019), *appeal dismissed*, 2021 WL 1502410 (2d Cir. Feb. 17, 2021).

###### 5.  State Law Claims

Because Plaintiff has only alleged a violation of his due process rights under the Fourteenth Amendment, (Am. Compl. ¶ II(B)), the Court does not interpret the Amended Complaint to raise any state law claims.  To the extent Plaintiff did intend to assert state law claims, (*see* Pl.'s Opp'n ¶ 37 (arguing that "[s]tate law claims are transferable [sic] to federal law claims")), such claims are barred by New York Correction Law Section 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee."  N.Y. Corr. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that Section 24 applies to claims in federal court).  "Courts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment."  *Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases).  Defendants clearly acted within the scope of their employment, as their actions as alleged in the Amended Complaint "arose as a result of the [D]efendants discharging their duties as correctional officers."  *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994).  Further, "there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quotation marks omitted).  Thus, Plaintiff's state law claims are barred.

III.  Conclusion

For the reasons stated above, Plaintiff's claims are dismissed.  Because this is the first adjudication of Plaintiff's claims on the merits, the Amended Complaint is dismissed without prejudice.  Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  The amended complaint should contain appropriate changes to remedy the deficiencies identified in this Opinion & Order.  Plaintiff is advised that the amended complaint will replace, not supplement, the instant Amended Complaint, and therefore must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the instant Motion, (Dkt. No. 38), and mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated:    September 17, 2021
          White Plains, New York

_____
    KENNETH M. KARAS
    United States District Judge