UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVAN CHAVEZ, <br><br>                            Plaintiff, <br><br> -v- <br><br> ERIC GUTWEIN, et al., <br><br>                            Defendants. | No. 20-CV-342 (KMK) <br><br> OPINION & ORDER |

Appearances:

Ivan Chavez
Stormville, NY
*Pro se Plaintiff*

John R. Doran, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Ivan Chavez ("Plaintiff"), currently residing at Green Haven Correctional Facility, brings this Action pursuant to 42 U.S.C. § 1983 against Hearing Officer Eric Gutwein ("Gutwein"), Nurse Lurch ("Lurch"), Correction Officer Nucatola ("Nucatola"), and Director of Special Housing Donald Venettozzi ("Venettozzi"; collectively, "Defendants"), alleging violations of his due process rights.  (Second Am. Compl. ("SAC") (Dkt. No. 49).)  Before the Court is Defendants' Motion To Dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion").  (*See* Defs.' Not. of Mot. (Dkt. No. 56).)  For the reasons that follow, Defendants' Motion is granted.

I. Background

Because Plaintiff's Second Amended Complaint ("SAC") alleges essentially the same facts as his Amended Complaint and the factual and procedural background of this Action has been summarized in this Court's previous Opinion & Order on the Motion To Dismiss the Amended Complaint (the "2021 Opinion"), the Court assumes familiarity with the general issues in dispute. (*See* Op. & Order ("2021 Op.") 2–5 (Dkt. No. 47).) The Court supplements the procedural history of this case since the issuance of the 2021 Opinion below.

On September 17, 2021, the Court granted Defendants' first Motion To Dismiss in full. (*Id*. at 39.) On November 29, 2021, Plaintiff filed his SAC. (Dkt. No. 49.) On December 20, 2021, Defendants filed a letter outlining the grounds for their anticipated Motion to Dismiss the SAC and proposed a briefing schedule. (Dkt. No. 50.) On January 10, 2022, the Court adopted Defendants' proposed briefing schedule. (Dkt. No. 51.) Defendants filed the instant Motion and supporting papers on February 11, 2022. (Dkt. Nos. 56, 57, 58.) Plaintiff's Opposition was filed on March 22, 2022. (Dkt. No. 59.) On April 15, 2022, Defendants filed their Reply. (Dkt. No. 60.)

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

2

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (alteration in original) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial

3

notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "his opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted)).

B. Analysis

The Court construes the SAC to raise a Fourteenth Amendment procedural due process claim. (*See generally* SAC.) Defendants move to dismiss the SAC on multiple grounds, arguing, inter alia, (i) that the SAC fails to allege Lurch's personal involvement, (*see* Defs.' Mem. of Law in Supp. of Mot. to Dismiss SAC ("Defs.' Mem.") 5 (Dkt. No. 57)); (ii) that the SAC fails to state a due process claim (*id.* at 6–18); (iii) and that Defendants are entitled to qualified immunity, (*id.* at 19–21). The Court will address these arguments as necessary to resolve the instant Motion.

1. Allegations Against Defendant Lurch

According to the SAC, Lurch reported to Nucatola that she had observed an unidentified object being passed from Plaintiff to another inmate, Quirindongo. (SAC ¶ IV(B)(1).)[1] Because Lurch's observation prompted Nucatola's search—which yielded several small bags of marijuana—Plaintiff alleges that Lurch's accusation "instigated" Nucatola's misbehavior report. (*Id.* ¶ IV(D)(8) (alleging that Lurch's "accusation" spurred the "genesis" of the misbehavior report); *id.* Ex. A ("Misbehavior Report") (Dkt. No. 49) (noting that Nucatola recovered nine small bags of marijuana on Quirindongo's person).) Defendants argue, as they argued in support of their Motion to Dismiss the Amended Complaint, (*see* Defs.' Mem. in Supp. of Mot. to

---

[1] Plaintiff's allegations are set forth in a standard complaint form interspersed with hand- and type-written pages. It appears that Plaintiff meant to treat the hand- and type-written paragraphs on ECF pages 5 and 7 through 16 as his response to paragraph IV(D) of the standard complaint form. Confusingly, however, paragraphs 1–4 on ECF page 5, and paragraphs 1–31 on ECF pages 7 through 16 are separated by a page from the standard complaint form and appear to contain different allegations relevant to certain aspects of Plaintiff's narrative. For ease of reference, therefore, the Court will treat the 4 type-written paragraphs on ECF page 5 as paragraphs IV(B)(1)–(4). Although Plaintiff apparently meant to group these paragraphs under paragraph IV(D), they have been placed immediately after paragraph IV(B). The Court will then treat the hand-written paragraphs on ECF pages 7 through 16 as paragraphs IV(D)(1)–(31).

5

Dismiss Am. Compl. 19–20 (Dkt. No. 39)), that these assertions are insufficient to establish Lurch's personal involvement in the alleged constitutional violation. (Defs.' Mem. 5-6.) Here, as before, the Court agrees.

As the Court stated in the 2021 Opinion, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation." (2021 Op. 10 (quoting *Falls v. Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *31 (S.D.N.Y. Mar. 26, 2021) (ellipsis omitted)).) Here, Plaintiff does not allege that Lurch helped to prepare Nucatola's false misbehavior report or took part in the Tier III hearing itself. (*See generally* SAC.) "His theory, rather, is that Lurch's accusation set in motion the alleged procedural due process violations that occurred as a result of the subsequent disciplinary proceeding. Such 'but[-]for causation,' however, 'is not the standard for [§] 1983 liability.'" (2021 Op. 11 (quoting *Muhammad v. Pico*, No. 02-CV-1052, 2003 WL 21792158, at *16 (S.D.N.Y. Aug. 5, 2003) (collecting cases)).) "Courts have recognized that the mere filing of a misbehavior report—even a false report—'does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing.'" (*Id.* (quoting *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986)); *see also, e.g.*, *Kingwood v. Coombe*, No. 96-CV-432, 1997 WL 323913, at *3 (S.D.N.Y. June 13, 1997) ("It is well established in this Circuit that even the filing of false charges against an inmate does not amount to a constitutional violation, and that the mere filing of a misbehavior report does not satisfy the 'personal involvement' requirement for § 1983 liability." (citations omitted)). "Here, Lurch's involvement is even more attenuated from the alleged constitutional violation: She merely reported suspicious activity that led to the filing of a misbehavior report. Thus, her minimal role in this case is insufficient to establish her personal involvement in the

alleged constitutional violation." (2021 Op. 11.) Accordingly, Plaintiff's claims against Lurch are dismissed.

### 2. Allegations Against Defendant Nucatola

Plaintiff alleges that Nucatola filed a false misbehavior report against him. (*See* SAC ¶ IV(B)(3); *see also id.* ¶ IV(D)(7).) As the Court wrote in its 2021 Opinion, "[t]he Second Circuit has long held . . . that a prison inmate has no constitutional right to be free from being falsely accused in a misbehavior report." (2021 Op. 12 (quoting *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011)); *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report"). "This principle also applies to allegedly 'false testimony by corrections personnel at prison disciplinary hearings.'" (2021 Op. 12 (quoting *Thomas*, 824 F. Supp. 2d at 499 (collecting cases)); *see also Brown v. Venettozzi*, No. 18-CV-2628, 2019 WL 4194432, at *5 (S.D.N.Y. Sept. 4, 2019) (same).

"There are, however, two exceptions to this rule." (2021 Op. 12.) "A correction officer's false misbehavior report or false testimony is actionable where an inmate is 'able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" (*Id.* (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015))); *see also Cook v. Quattrocchi*, No. 19-CV-11659, 2020 WL 564082, at *2 (S.D.N.Y. Feb. 5, 2020) (same).

The Court addressed this issue in its 2021 Opinion. (*See* 2021 Op. 11–13.) Because Plaintiff has added no new allegations related to this claim, as before, neither exception applies. That is, "Plaintiff was not disciplined without adequate due process as a result of Nucatola's allegedly false misbehavior report. Nor has Plaintiff alleged that Nucatola's report was issued in

retaliation for Plaintiff's exercise of a constitutionally protected right." (2021 Op. 13.) Accordingly, Plaintiff's allegations regarding Nucatola's false misbehavior report, as well any allegations regarding Nucatola's false testimony, fail to state a claim and are therefore dismissed. *See, e.g.*, *Brown*, 2019 WL 4194432, at *5 (holding that a defendant's allegedly false misbehavior report and testimony did not violate the plaintiff's constitutional rights where the plaintiff had not been "disciplined without adequate due process" and the plaintiff did not allege that the false report was issued in retaliation for his exercise of a constitutionally protected right); *Jackson v. Jackson*, No. 16-CV-8516, 2018 WL 1918626, at *3 (S.D.N.Y. Apr. 20, 2018) (holding that a plaintiff's claim "stemming from [an] allegedly false misbehavior report" failed to state a claim "because the factual allegations [did] not support the contention that [the] [p]laintiff was disciplined without adequate due process as a result of the allegedly false report, or that the report was issued in retaliation for exercising a constitutionally protected right").

Accordingly, the Court again dismisses any claims as to Nucatola.

### 3. Allegations Against Defendant Gutwein

Plaintiff argues that Gutwein, the officer who presided over Plaintiff's disciplinary hearing, deprived Plaintiff of his due process rights. (*See* SAC ¶ IV(B)(3).) As the Court noted in the 2021 Opinion, "[t]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." (2021 Op. 14 (quoting *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration omitted)).

#### a. Liberty Interest

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (*Id.* quoting *Ortiz*,

8

380 F.3d at 654).) "When evaluating whether an inmate has suffered 'atypical and significant hardship,' courts must compare the conditions imposed upon that inmate with the conditions 'endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.'" (*Id.* (quoting *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999)).) "When evaluating the severity of an inmate's hardship, courts should consider both the duration and the conditions of confinement. (*Id.* (citing *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009)).)

Here, as before, Plaintiff alleges that he spent 117 days in the Special Housing Unit ("SHU"), lost the enjoyment of various activities and privileges, and experienced "severe mental and emotional anguish." (SAC ¶ V.) As the Court pointed out in the 2021 Opinion, "the Second Circuit has explained that where a plaintiff is confined in SHU for an 'intermediate duration' of between 101 and 305 days, 'development of a detailed record' regarding the conditions of confinement as compared to 'ordinary prison conditions' is required" to determine whether a prisoner's liberty interest was infringed. (2021 Op. 17 (quoting *Palmer v. Richards*, 364 F.3d 60, 64–65 (2d Cir. 2004).) "Accordingly, a number of courts [in this district] have concluded that where, as here, the duration of a plaintiff's confinement in SHU falls in the 'intermediate' range, 'the fact-finding required by the Second Circuit . . . cannot occur on a motion to dismiss.'" (*Id.* (quoting *Mena v. Gutwein*, No. 19-CV-3882, 2020 WL 5370708, at *4 (S.D.N.Y. Sept. 8, 2020) (quotation marks omitted))); *see, e.g.*, *Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *22 (S.D.N.Y. Sept. 26, 2019) (declining to dismiss due process claim for failure to allege a liberty interest where the plaintiff had been sentenced to 180 days in punitive segregation, because "development of a detailed record of the conditions . . . [was] required"); *Koehl v.*

*Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (same with respect to a plaintiff who spent 120 days in SHU, and concluding that, on a motion to dismiss, the court could not dismiss the plaintiff's due process claim "for failure to describe in detail the conditions of his confinement"), *report and recommendation adopted*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011). In the 2021 Opinion, the Court therefore "assum[ed] without deciding that Plaintiff's SHU confinement implicates a protected liberty interest, and will turn to consider whether he has alleged a deprivation of sufficient process." (2021 Op. 19 (quotation marks omitted)); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (assuming without deciding that the plaintiff had adequately alleged a liberty interest where he alleged that his SHU confinement "included loss of packages, commissary, and phone privileges" (alteration omitted)).

### b. Procedural Adequacy

"To state a procedural due process claim, Plaintiff must allege not only that he was deprived of a liberty interest, but also that he was so deprived *as a result of insufficient process*." (2021 Op. 19 (citing *Ortiz*, 380 F.3d at 654).) "[A] disciplinary hearing comports with due process when an inmate receives 'advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken.'" (*Id.* (quoting *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).) "'Prison disciplinary proceedings,' however, 'are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.'" (*Id.* (quoting *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015).) "Ultimately, a guilty finding in an inmate disciplinary hearing only needs to

10

be supported by 'some evidence from which the conclusion . . . could be deduced.'" (*Id.* at 20 (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (quotation marks omitted).)

Plaintiff first argues that his disciplinary hearing was procedurally inadequate because Gutwein allegedly denied him the opportunity to call certain witnesses, including Lurch. (*See* SAC ¶ IV(B)(3).) As the Court stated in its 2021 Opinion, the transcript of Plaintiff's disciplinary hearing (the "Hearing Transcript") contradicts Plaintiff's assertion. (2021 Op. 22; *see also* SAC Ex. C ("Hearing Tr.") 2 (Dkt. No. 49).) The Hearing Transcript in fact indicates that Gutwein asked Plaintiff if he wished to call witnesses on his behalf, and Plaintiff identified three witnesses—not including Lurch. (*See* Hearing Tr. 2.) The Court "need not . . . accept as truth [] pleadings . . . that are contradicted . . . by documents upon which its pleadings rely." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (complaint dismissed where allegations "belied" by letters attached to complaint).

Even accepting Plaintiff's allegations as true, however, "[t]he Second Circuit has held that prison disciplinary hearings are subject to a harmless error analysis." *Williams v. Chuttey*, No. 15-CV-1278, 2017 WL 9673722, at *7 (N.D.N.Y. Sept. 5, 2017) (citing *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) and *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). The Court in 2021 therefore found that "even if Gutwein denied Plaintiff's request to call Lurch as a witness, this denial would constitute harmless error, as Lurch's testimony would have been duplicative of other evidence in the hearing record." (2021 Op. 26); *see also Ford v. Fischer*, No. 09-CV-723, 2011 WL 856416, at *3 (N.D.N.Y. Jan. 31, 2011) (holding that "any procedural errors" based on a hearing officer's refusal to call two witnesses was "harmless" because "none of the excluded evidence would have effected [sic] the outcome of the hearing"), *report and recommendation*

11

*adopted*, 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011); *Zamakshari v. Dvoskin*, 899 F. Supp. 1097 (S.D.N.Y. 1995) (concluding that hearing officer's alleged denial of a potential witness's testimony was harmless where the "testimony would most likely have made little or no difference" to the outcome of the hearing).

Next, Plaintiff argues that Gutwein improperly decided the outcome of Plaintiff's disciplinary hearing solely on (1) hearsay evidence and (2) Nucatola's allegedly false misbehavior report. (*See* SAC ¶ IV(B)(3).) First, "hearsay evidence is admissible in prison disciplinary proceedings." (2021 Op. 31 (citing *Buchanan v. Warden, FCI Otisville*, No. 13-CV-6356, 2014 WL 3778205, at *3 (S.D.N.Y. July 31, 2014))); *see also Louis v. Ricks*, No. 01-CV-9368, 2002 WL 31051633, at *13 n.25 (S.D.N.Y. Sept. 13, 2002) (gathering authority for the proposition that "hearsay is admissible in a [prison] disciplinary proceeding"). "Although the Second Circuit has held that a prisoner's due process rights are violated 'when he is punished solely on the basis of a victim's hearsay accusation without any indication in the record as to why the victim should be credited,'" (2021 Op. 32 (quoting *Luna*, 356 F.3d at 490)), the Court in 2021 found that "that is not the situation here," (*id.*). Specifically,

> According to the hearing record attached to the Amended Complaint, Gutwein relied on four pieces of evidence in determining that Plaintiff was guilty of the charged offense: (1) Nucatola's misbehavior report, which contained Lurch's allegation that Plaintiff was observed passing an unidentified object to Quirindongo; (2) Nucatola's testimony at the disciplinary hearing, in which he stated that he recovered 2.1 grams of marijuana from Quirindongo; (3) Quirindongo's testimony at the disciplinary hearing, in which he stated that Plaintiff had passed him a pencil; and (4) Plaintiff's testimony at the disciplinary hearing, in which he first suggested he had passed nothing, but then suggested that he had passed a pencil.

(*Id.* (citations omitted).) The SAC contains nearly identical allegations and attaches the same hearing record. (*See generally* SAC). Although the SAC contains additional verbiage regarding the hearing and the subsequent appeal, (*see* SAC ¶ IV(D)(13–30)), these additional allegations

do not contain any new facts that would change the Court's analysis. For example, the SAC alleges that "Gutwein never provided the [m]andatory 2176 form in connection with [the] witness[] denials. (*Id.* ¶ IV(D)(14)). As discussed *supra,* the hearing record contradicts Plaintiff's assertion that Plaintiff requested that additional witnesses testify and that Gutwein denied that request. Even assuming that Plaintiff's allegations are true, however, "any procedural errors," such as failing to provide Plaintiff with a form, are "harmless" and would not have "effected the outcome of the hearing." *See Ford*, 2011 WL 856416, at *3. The Court therefore again concludes that "there was enough reliable evidence of guilt in the hearing record to support Gutwein's determination." (2021 Op. 36.)

Second, with respect to Plaintiff's argument that Gutwein improperly relied on Nucatola's misbehavior report, the Court in 2021 noted that "just as an inmate possesses no due process right to be free from being issued a false misbehavior report, an inmate possesses no due process right to be free from having that false misbehavior report relied on by a hearing officer at a disciplinary hearing." (2021 Op. 29 (quoting *Fulmore v. Raimo*, No. 10-CV-1096, 2012 WL 4033731, at *4 (N.D.N.Y. Sept. 12, 2012).) "Moreover, it is well-established that a correction officer's misbehavior report may constitute reliable evidence of guilt." (*Id.* at 30 (citing *Thomas v. Connolly*, No. 10-CV-2401, 2012 WL 3776698, at *23 (S.D.N.Y. Apr. 10, 2012), *report and recommendation adopted*, 2012 WL 3758457 (S.D.N.Y. Aug. 30, 2012), *appeal dismissed*, No. 12-4061 (2d Cir. Apr. 5, 2013))); *see also Thomas*, 2012 WL 3776698, at *23 (concluding that, "for purposes of a prison disciplinary hearing," a misbehavior report summarizing the results of an investigation into the plaintiff's alleged misconduct constituted sufficient evidence to support the hearing officer's guilty determination).

13

Thus, "Plaintiff does not plausibly allege that there was no reliable evidence of guilt in the hearing record, and thus, he fails to state a procedural due process claim against Gutwein based on inadequate evidence." (2021 Op. 36.)

### 4. Allegations Against Defendant Venettozzi

Plaintiff asserts a due process claim against Venettozzi based on Venettozzi's initial decision to affirm Gutwein's guilty determination. (*See* SAC ¶ IV(B)(4).) However, "given 'the absence of any underlying constitutional violation' at Plaintiff's disciplinary hearing, "'Plaintiff cannot maintain a cause of action against Defendant Venettozzi based on' his affirmance of Gutwein's determination." (2021 Op. 37 (quoting *Hinton v. Prack*, No. 12-CV-1844, 2014 WL 4627120, at *13 (N.D.N.Y. Sept. 11, 2014))); *see also Barnes v. Annucci*, No. 15-CV-777, 2019 WL 1387460, at *15 (N.D.N.Y. Mar. 12, 2019) (explaining that "because no constitutional violation occurred" at the plaintiff's disciplinary hearing, "and there was no wrong to remedy," the plaintiff could not state a due process claim against Venettozzi based on his affirmance of the disciplinary determination), *report and recommendation adopted*, 2019 WL 381385297 (N.D.N.Y. Mar. 27, 2019), *appeal dismissed*, 2021 WL 1502410 (2d Cir. Feb. 17, 2021).

\* \* \*

In sum, the Court dismisses the Second Amended Complaint for the same reasons that it dismissed the nearly identical Amended Complaint. "The mere filing of a[] [Second] Amended Complaint does not entitle Plaintiff to relitigate his claims absent new factual allegations." *Kotler v. Boley*, No. 17-CV-239, 2020 WL 905752, at *3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied*, No. 17-CV-239, 2020 WL 8665289 (S.D.N.Y. Nov. 9, 2020). "Because the [Second] Amended Complaint . . . is in large part identical to Plaintiff['s] [Amended] Complaint, the law of the case doctrine counsels against reconsideration of the Court's . . .

dismissal of the [Amended] Complaint." *Weslowksi v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015) (citation omitted), *aff'd*, 626 F. App'x 20 (2d Cir. 2015); *see also Perkins v. Perez*, No. 17-CV-1341, 2020 WL 248686, at *4–5 (S.D.N.Y. Jan. 16, 2020) (applying the law-of-the-case doctrine to dismiss portions of a pro se complaint where the two pleadings at issue were "substantially identical"); *Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *4 (S.D.N.Y. Sept. 28, 2016) ("Although [the] [p]laintiff has added more detail to his complaint, he has not alleged additional facts that would persuade th[e] [c]ourt to veer from [the court's previous] determination that [the] [p]laintiff has failed to state . . . [a] claim against [the defendant]."); *Guttilla v. City of New York*, No. 14-CV-156, 2016 WL 1255737, at *3 (S.D.N.Y. Mar. 29, 2016) ("After a thorough review of [the plaintiff's] submissions, the [c]ourt concludes that the [a]mended [c]omplaint adds few new non-conclusory allegations, and those additional allegations do not affect the [c]ourt's prior analysis.").

### III.  Conclusion

For the reasons stated above, Plaintiff's claims are dismissed.  Because this is the second adjudication of Plaintiff's claims on the merits, the SAC is dismissed with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and quotation marks omitted)).

The Clerk of Court is respectfully directed to terminate the instant Motion, (Dkt. No. 56), mail a copy of this Opinion & Order to Plaintiff, and close this case.

SO ORDERED.

Dated: May 11, 2022
        White Plains, New York

                                                       KENNETH M. KARAS
                                                    United States District Judge